BEYER and others, Respondents, vs. THE SOPER LUMBER COMPANY, Appellant.

*December 6, 1889 — March 18, 1890.*

*(1) Contracts: Logs and lumber: Measurement. (2, 3) Removal of cause to federal court: When and to what court application must be made.*

1. A contract for the sale of two lots of logs provided that advancements should be made on the basis of the log scale, and that final settlement should be made for each lot separately on the basis of the mill scale. A mill scale was kept of one lot but not of the other. In an action for the contract price, *held*, that it was error to render judgment for the balance due on both lots on the basis of the log scale, without reference to the mill scale so kept.

2. An application for the removal of a cause to the federal court, under the act of Congress of 1887, on the ground of diversity of citizenship, must be made at or before the defendant is required to answer the original complaint.

3. An application, under said act, for removal on the ground of prejudice and local influence, must be made to the federal court.

APPEAL from the Circuit Court for *Shawano* County.

Action to recover the balance due upon a contract for the sale and delivery of pine logs. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiffs.

For the appellant there was a brief by *Ellis, Greene & Merrill*, and oral argument by *Geo. G. Greene*. They contended, *inter alia*, that when the application is to remove on the ground of prejudice and local influence, under the law of 1887, it may be made at any time before trial and in the state court. *Fisk v. Henarie*, 32 Fed. Rep. 417, 35 id. 230; *Lookout M. R. Co. v. Houston*, 32 id. 711; *Whelan v. N. Y., L. E. & W. R. Co.* 35 id. 849; *Hills v. R. & D. R. Co.* 33 id. 81; *Short v C., M. & St. P. R. Co.* id. 114; *McDermott v. C. & N. W. R. Co.* 38 id, 529. Even as an application on the ground of diversity of citizenship, inasmuch as the application was filed before the amended complaint and answer were filed or served, it was before the appellant was "required to plead," within the law of 1887. *Lockhart v. M. & L. R. Co.* 38 Fed. Rep. 274; *Huskins v. C., N. O. & T. P. R. Co.* 37 id. 504; *Wedekind v. S. P. R. Co.* 36 id. 279; *Gavin v. Vance*, 33 id. 84.

For the respondents there was a brief by *Webster & Wheeler*, and oral argument by *W. H. Webster*. To the point that the application for removal on the ground of prejudice and local influence should have been made directly to the federal court, they cited, besides cases referred to in the opinion, *Huskins v. C., N. O. & T. P. R. Co.* 37 Fed. Rep. 504; *Southworth v. Reid*, 36 id. 451; *Dennison v. Brown*, 38 id. 535; *Amy v. Manning*, id. 536.

The following opinion was filed January 7, 1890:

ORTON, J. This action is brought by the plaintiffs, as the assignees and present holders thereof, to recover the balance due upon a contract between C. B. Alford, the assignor,

and the defendant, for the sale and delivery of pine logs, dated March 31, 1885. The contract provided in substance for the sale of two certain lots of logs banked or to be banked on waters tributary to the Menomonee river during that season,—the first lot to contain 2,400,000 feet, more or less, and the other to contain 1,000,000 feet, more or less; the first lot, called the "Brule River" logs, and the other lot, called the "C. B. A." logs, to be delivered within the limits of the Menomonee River Manufacturing Company's booming grounds prior to August 1, that year; the price for both lots to be $7.25 per 1,000 feet. Advancements were to be made on both lots, of different amounts and at different times, on the woods or log scale, and counted as they passed the dam below on the Brule river, as the basis of such advancements, and the said Alford was to execute a bond to the company for such advancements or the excess thereof if they should finally prove to be too much on final settlement. The final settlement was to be made on the basis of the *lumber scale* at the mill, or upon the estimate from it, "and settlement to be made for *each* of above lots of logs, *separately*," at the close of the sawing season of that year. The jury found that the contract was modified so that no count of the logs need be made at said dam, but that the woods or log scale should be the basis of said advancements.

The sawing was to be done at a mill called the "Island Mill." That mill changed hands in the fall of 1885, and was so reconstructed that no lumber scale could be kept of any one certain lot of logs, as logs of different marks were sawed together, promiscuously. But, before such changes were made, the lot of logs called the "C. B. A.," or the larger portion of them, were sawed, and a lumber scale thereof was kept; so that an estimate of the lumber of the whole of that lot could be made from the lumber scale so kept. The Brule river logs were not sawed until the next

year, and when sawed there was no lumber scale thereof kept, so that it became necessary to make the estimate of the lumber of that lot of logs from the woods or log scale made or kept by the said Alford. This was claimed by the defendant to be unfair, but it would seem that such *data* had to be depended upon from necessity. The lumber scale was much less than the woods or log scale, as shown by it, of the C. B. A. logs.

The jury found that the whole number of the Brule river logs was 15,753, and the number of feet, 2,296,734, and that the whole number of the C. B. A. logs was 3,368, and the number of feet 1,107,057, as shown by the woods scale; and the court rendered judgment for the balance due the plaintiffs over and above the advancements on that basis. The jury found, also, that Alford did not waive the keeping tally of the lumber sawed from Brule river logs, and did not know that no tally had been kept of it until a few days before the trial. The defendant would no doubt have kept a lumber scale of the Brule river logs, as well as of the C. B. A. logs, if they had been run down and delivered in the sawing season of 1885, as agreed; but they were not delivered until the sawing season of 1886, and after the Island mill had been so reconstructed that no lumber tally or scale could be kept. The fault was therefore upon Alford, rather than upon the defendant. If any considerable portion of the Brule river logs had been sawed in 1885, and a lumber scale had been kept of them, as would have been done in that season, there would have been a basis of estimate of the lumber of that lot, also.

The court seemed to treat both classes of these logs as one, or an entirety, when the contract, in so many words, requires the settlement to be made for *each* of the lots of logs *separately*, and they are treated as distinct and separate lots all through the contract. But, on the theory that they are to be treated as one, then, as the lumber scale of the

C. B. A. logs was kept, that would have been a basis for the lumber estimate of the Brule river logs, also, or of the whole. The court did not submit to the jury the question of the amount of the C. B. A. lumber according to the mill scale, and it was rated according to the woods scale, the same as the Brule river logs. This was not only a palpable; but an inconsistent, error. The whole amount of the lumber from the C. B. A. logs should have been estimated according to the lumber scale kept of that lot of logs, irrespective of the Brule river logs. It is true that there is no finding of the jury as to what lumber there was in that lot of logs according to the mill scale, but the jury found the *number* of those logs; and the complaint supplies all the other needed *data* for a full estimate of it by the court, and the judgment ought to have been rendered accordingly. The court can yet correct that error, by deducting from the amount of the judgment the difference between what the C. B. A. logs come to, estimated according to the woods scale, and what they would come to according to the lumber or mill scale, and by adjusting the interest and costs accordingly. This can be done the more easily because the advance payments were made on each lot of logs separately, and the jury found that the payments made on account of the C. B. A. logs were $7,535.72. It is alleged in the complaint that "2,628 in number of the logs marked ' C. B. A.' were manufactured into lumber during the sawing season of 1885, making, as shown by the lumber scale thereof at the mill, 662,035 feet of lumber, and averaging 252 feet to the log." There appears to have been evidence that justified the findings of the jury. It was not very material whether the logs were counted at the dam or not, for that and the woods scale were to be taken only in the matter of advancements; but it was very material that the lumber scale should have been kept, for that was to determine the whole amount to be paid. It was evidently supposed that

the woods scale and the count at the dam would make the amount too great, and more than the lumber scale; and therefore a bond was exacted from Alford to reimburse the defendant if the advancements should exceed the finally determined amount. Both parties departed from the agreement, and are equally at fault in making it impossible to be strictly accurate in the amount of the Brule river logs or lumber. The verdict in respect to that lot of logs is probably as near correct as possible under the circumstances. But as to the C. B. A. logs it is possible to be accurate and carry out the contract. All other errors of law in the trial complained of do not, in our opinion, affect the substantial rights of the parties, and will therefore be disregarded.

An application was made by the defendant to change the venue of this cause to the circuit court of the United States of that district, on the two grounds of the citizenship of the defendant corporation of the state of Illinois, the plaintiffs and their assignor being citizens and residents of this state, and of prejudice and local influence. The application was denied, and this is assigned as error. The time for answering the original complaint was extended until January 11, 1887, on which day the answer was served. This application was made on the third Monday of May thereafter, it being the first day of the term of the Oconto circuit court. An amended complaint was served on the 27th day of June thereafter. The time for answering the amended complaint had been extended to, and expired, the 23d day of July thereafter, at which time said answer was served. Before the time of making this application, the act of Congress of 1887 had taken effect, and after that the removal of the cause would be governed by it. *Manley v. Olney*, 32 Fed. Rep. 708. By that act the application for the removal for diversity of citizenship must be made " at the time, or any time before, the defendant is required . . . to answer or plead to the declaration or complaint

of the plaintiff." It is contended by the learned counsel of the appellant that the application was in time because it was made before the defendant was required to answer the amended complaint.

The decisions of the federal courts on this question appear to be in conflict. It is held in *Woolf v. Chisolm*, 30 Fed. Rep. 881, that the time when the defendant is required to answer the original complaint is the time fixed by the law. That would seem to be reasonable. The time had expired for making the application. Could that time be extended or revived, or another time be fixed, by the service of an amended complaint? If so, leave to file an amended answer to the original complaint would have the same effect, and by that accident the defendant would have another time to make the application. An amended complaint is not a new pleading, but an amendment to the original complaint. The time had once expired, and the right to a removal of the cause was gone. That right cannot be restored by any act of the parties, or by any accident, or by any stipulation. The law has fixed but one time, and that is at or before the time required to answer "by the laws of the state, or the rule of the state court," and not by stipulation, or by the discretion of the court. See *Dixon v. W. U. Tel. Co.* 38 Fed. Rep. 377; *Austin v. Gagan*, 39 Fed. Rep. 626; *Pullman P. Car Co. v. Speck*, 113 U. S. 84; *Gregory v. Hartley*, 113 U. S. 746; *Hurd v. Gere*, 38 Fed. Rep. 537; *Kaitel v. Wylie*, 38 Fed. Rep. 865. The application for removal on the ground of prejudice and local influence, by the law then in force, must be made to the federal court, and that court must pass upon the facts. *Kaitel v. Wylie, supra; Malone v. R. & D. R. Co.* 35 Fed. Rep. 625; *Short v. C., M. & St. P. R. Co.* 33 Fed. Rep. 114, and 34 Fed. Rep. 225, and other cases cited in the brief of respondent's counsel. Such appears to be the opinion of Mr. Justice HARLAN of the supreme court. There may be a diversity

of opinion on this question, also, but such seems to be the law. The application was properly denied.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment in accordance with this opinion.

The following opinion was filed March 18, 1890:

ORTON, J.   Both parties have moved for a rehearing in this case, and both motions seem to be based upon a misunderstanding or misconstruction of the opinion and judgment.   The language of the opinion is as follows: "The verdict in respect to that lot of logs [Brule river logs] is probably as near correct as possible under the circumstances.   But, as to the C. B. A. logs, it is possible to be accurate and carry out the contract.   All other errors of law in the trial complained of do not, in our opinion, affect the substantial rights of the parties, and will therefore be disregarded."   "The lot of logs called the ' C. B. A.' logs, or the larger portion of them, were sawed, and a lumber scale thereof was kept; so that an estimate of the lumber of the whole of that lot could be made from the lumber scale so kept."   "It is true that there is no finding of the jury as to what lumber there was in that lot of logs according to the mill scale; but the jury found the number of those logs, and the complaint supplies all the other needed *data* for a full estimate of it by the court, and the judgment ought to have been rendered accordingly.   The court can yet correct that error, by deducting from the amount of the judgment the difference between what the C. B. A. logs come to, estimated according to the woods scale, and what they would come to according to the lumber or mill scale, and by adjusting the interest accordingly."   The judgment of this court was that the judgment of the circuit court be modified in accordance with this opinion.

Is this difficult to understand?  This court did not disturb the findings or judgment of the court below, except in this one particular — that the C. B. A. logs should have been estimated according to the mill scale.  If this had been done, the amount of the lumber delivered would have been considerably less than found by the court.  The *data* for the correction are clearly stated in the opinion.  All the circuit court has to do is to make the proper deduction, as above stated.  That will change also the amount of interest allowed, and that must be computed on the value or price of the remainder of the lumber after such deduction.  If the result reverses the former judgment, then the court must adjust the costs accordingly.  That is all there is of it.  It would seem perfectly plain.  The former judgment in all respects except this was approved.

As to the undelivered logs, they must remain as the judgment left them, like everything else, except in this one particular.

*By the Court.*— Both motions are denied, but without costs.